**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO. 20-31417 (JPN)** |
| **MEDCARE PEDIATRIC GROUP, LP, et al,**[1] | § | **(Chapter 11)** |
| | § | **(Jointly Administered)** |
| **Debtor.** | § | |

**DEBTORS' JOINT PLAN OF REORGANIZATION**
**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**
**FOR MEDCARE PEDIATRIC GROUP, LP, ET AL**

## ARTICLE I

## SUMMARY

This Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code for MedCare Pediatric Group, LP, et al (the "Plan") proposes to pay creditors of the joint Debtors, MedCare Pediatric Group, LP ("MedCare Group"), MedCare Pediatric Nursing, LP ("MedCare Nursing, LP ("MedCare Nursing", MedCare Pediatric Rehab Center, LP ("MedCare Rehab"), MedCare Pediatric Therapy, LP ("Medcare Therapy"), Kinwan, LLC ("Kinwan"), Kinkade-Wang Enterprises, LLC ("KW Enterprises"), Kinkade-Wang Properties, LLC ("KW Properties"), and KW Commercial Holdings, LLC ("KW Commercial")(hereinafter all collectively referred to as the "Debtors") from ongoing operations and cash flow of the Debtors, liquidations of assets, and an infusion of capital through the issuance of new equity interests in the Newly Reorganized Debtors.

This Plan provides for three (3) classes of claims and interests for each of the Debtors. Those classes are identified below in Article II. This Plan also provides for the payment of administrative and priority claims that are not classified.

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: MedCare Pediatric Group, LP (8189), Case No. 20-31417, MedCare Pediatric Nursing, LP (7791), Case No. 20-31419, MedCare Pediatric Rehab Center, LP (8770), Case No. 20-31421, MedCare Pediatric Therapy, LP (8566), Case No. 20-31423, Kinkade-Wang Enterprises, LLC (3352), Case No. 20-31424, Kinkade-Wang Properties, LLC (6081), Case No. 20-31426, Kinwan, LLC (5891), Case No. 20-31427, and KW Commercial Holdings, LLC (0960), Case No. 20-31428 (Collectively referred to as the "Debtors").

has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.**

## ARTICLE II

## CLASSIFICATION OF CLAIMS AND INTERESTS

2.01 MedCare Group's Claims and Interests

MedCare Group Class 1 Claim. This class consists of the Allowed, Secured Tax Claims of Fort Bend County and Fort Bend County WICD #2.

MedCare Group Class 2 Claims. This class consists of the Allowed, General Unsecured Claims.

MedCare Group Class 3 Interests. This class consists of all Allowed, Equity Interests in MedCare Group. This class consists of Steve Wang, Paige Kinkade, and MedCare Pediatric Group GP, LLC.

2.02 MedCare Nursing's Claims and Interests

MedCare Nursing Class 1 Claim. This class consists of the Allowed, Secured Tax Claims of Fort Bend County and Fort Bend County WICD #2.

MedCare Nursing Class 2 Claims. This class consists of the Allowed, General Unsecured Claims.

MedCare Nursing Class 3 Interests. This class consists of all Allowed, Equity Interests in MedCare Nursing. This class consists of MedCare Group, MedCare NSG, LLC, Steve Wang, and Paige Kinkade.

2.03 MedCare Rehab's Claims and Interests

MedCare Rehab Class 1 Claim. This class consists of the Allowed, Secured Tax Claims of Fort Bend County and Fort Bend County WICD #2.

MedCare Rehab Class 2 Claims. This class consists of the Allowed, General Unsecured Claims.

MedCare Nursing Class 3 Interests. This class consists of all Allowed, Equity Interests in MedCare Rehab. This class consists of MedCare Group, MedCare Pediatric Rehab GP, LLC, Steve Wang, and Paige Kinkade.

2.04 MedCare Therapy's Claims and Interests

MedCare Therapy Class 1 Claim. This class consists of the Allowed, Secured Tax Claims of Fort Bend County and Fort Bend County WICD #2.

MedCare Therapy Class 2 Claims. This class consists of the Allowed, General Unsecured Claims.

MedCare Therapy Class 3 Interests. This class consists of all Allowed, Equity Interests in MedCare Therapy. This class consists of MedCare Group, MedCare TPY, LLC, Steve Wang, and Paige Kinkade.

2.05 Kinwan's Claims and Interests

Kinwan Class 1 Claim. This class consists of the Allowed, Secured Claim of Veritex based on the promissory note dated 2/7/2018, secured by deed of trust and security agreement and assignment of rents, interest at 4.75%, payable by monthly P&I payment of $26,043.63, with a 15-year term, approximate principal balance of $4,363,799.66 (the "Kinwan Note").

Kinwan Class 2 Claim. This class consists of the Allowed, Secured Tax Claims of Fort Bend County and Fort Bend County WICD #2.

Kinwan Class 3 Interests. This class consists of all Allowed, Equity Interests in Kinwan. This class consists Steve Wang and Paige Kinkade.

2.06 KW Properties' Claims and Interests

KW Properties Class 1 Claim. This class consists of the Allowed, Secured Claim of Veritex based on: (a) the promissory note dated 9/21/2016, secured by deed of trust and security agreement and assignment of rents, interest at 4.5%, payable by monthly P&I payment of $9,160.01, with a 20-year term, approximate principal balance of $1,275,906.33; and (b) the promissory note dated 9/21/20216, secured by deed of trust and security agreement and assignment of rents, interest at 4.5%, payable by monthly P&I payment of $7,379.13, with a 20-year term, approximate principal balance of $1,028,605.76 (the "KW Properties Notes").

KW Properties Class 2 Claim. This class consists of the Allowed, Secured Tax Claims of Fort Bend County and Fort Bend County WICD #2.

KW Properties Class 3 Interests. This class consists of all Allowed, Equity Interests in KW Properties. This class consists Steve Wang and Paige Kinkade.

2.07 KW Enterprises Claims and Interests

KW Enterprises Class 1 Claim. This class consists of the Allowed, Secured Claim of Veritex, based on the promissory note dated 9/21/2016, secured by deed of trust and security agreement and assignment of rents, interest at 4.5%, payable by monthly P&I payment of $8,956.74, with a 20-year term, approximate principal balance of $1,246,993.73. (the "KW Enterprises Note").

KW Enterprises Class 2 Claim. This class consists of the Allowed, Secured Tax Claims of Fort Bend County and Fort Bend County WICD #2.

KW Enterprises Class 3 Interests. This class consists of all Allowed, Equity Interests in KW Enterprises. This class consists Steve Wang and Paige Kinkade.

2.08 KW Commercial's Claims and Interests

KW Commercial Class 1 Claim. This class consists of the Allowed, Secured Claim of Veritex, based on the promissory note dated 1/8/2016, secured by deed of trust and security agreement, interest at prime plus 1%, payable by monthly P&I payment of $4,532.30, with a 20-year term, approximate principal balance of $631,983.37. (the "KW Commercial Note").

KW Commercial Class 2 Claim. This class consists of the Allowed, Secured Tax Claims of Fort Bend County and Fort Bend County WICD #2.

KW Commercial Class 3 Interests. This class consists of all Allowed, Equity Interests in KW Commercial. This class consists Steve Wang and Paige Kinkade.

## ARTICLE III

## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

3.01 Non-Classified Claims. Claims and interests shall be treated as follows under this Plan. Certain types of claims are automatically entitled to specific treatment under the Code. They are not considered impaired, and holders of such claims do not vote on the Plan. They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code. As such, the Plan Proponent has *not* placed the following claims in any class. One category of such claims are administrative expenses are costs or expenses of administering the Debtor's chapter 11 case, which are allowed under § 507(a)(2) of the Code. Fees owed to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) are another category of such administrative expenses. Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition. The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment. All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid. To the extent there are such fees

due and owing on the confirmation date, such fees will be paid in cash in full on the Effective Date. Other U.S. Trustee Fees incurred after the confirmation date will be paid timely until the case is closed. Holders of other forms of allowed administrative expense claims shall be paid in cash, in full, on the Effective Date, or as agreed between the Debtor and such holder of administrative expense claim.

3.02 Treatment of MedCare Group's Claims and Interests.

MedCare Group Class 1 Claim. Notwithstanding anything to the contrary contained within the plan or approved disclosure statement, the Allowed MedCare Group Class 1 Claims shall be paid pursuant to the provisions of 11 U.S.C. § 1129(a)(9)(C) and (D), in equal monthly installments commencing 30 days from the Effective Date and ending 60 months from the Petition Date. The claims shall bear interest at the statutory rate of 12% per annum as provided by applicable non-bankruptcy law until said taxes are paid in full. The 2021 and subsequent ad valorem owed to the Taxing Jurisdictions shall be paid in the ordinary course of business and the Taxing Jurisdictions shall not be required to file a request for allowance and payment of their claims. The Taxing Jurisdictions shall retain all liens until such taxes are paid in full. In the event that any part of the retained property is sold during the term of the plan, the unpaid taxes secured by said property shall be paid in full and upon the sale of the property. If any property which secures the ad valorem tax claims is repossessed and posted for sale by any lienholder, the Taxing Jurisdictions shall be free to pursue their state law remedies for collection of all amounts due under the Texas Property Tax Code. The claims of the Taxing Jurisdictions are superior to and shall be paid before the claims of Veritex.

MedCare Group Class 2 Claims. Allowed MedCare Group Class 2 Claims will be paid in cash, in full plus interest at a rate of 4.0% in equal monthly installments over a period of seventy-two (72) months after the Effective Date, with the first payment due within thirty (30) days after the Effective Date.

MedCare Group Class 3 Interests. MedCare Pediatric Group GP, LLC will retain its 1% partnership interest in MedCare Group and continue to serve as its general partner. Steve Wang and Paige Kinkade will retain their limited partnership interests in exchange for their capital contribution of payment of all administrative expenses for professional fees and conversion of their unsecured claims into limited partnership interests.

3.03 Treatment of MedCare Nursing's Claims and Interests.

MedCare Nursing Class 1 Claim. Notwithstanding anything to the contrary contained within the plan or approved disclosure statement, the Allowed MedCare Nursing Class 1 Claims shall be paid pursuant to the provisions of 11 U.S.C. § 1129(a)(9)(C) and (D), in equal monthly installments commencing 30 days from the Effective Date and ending 60 months from the Petition Date. The claims shall bear interest at the statutory rate of 12%per annum as provided by applicable non-bankruptcy law until said taxes are paid in full. The 2021 and subsequent ad valorem owed to the Taxing Jurisdictions shall be paid in the ordinary course of business and the Taxing Jurisdictions shall not be required to file a request for allowance and payment of their claims. The Taxing Jurisdictions shall retain all liens until such taxes are paid in full. In the event that any part

of the retained property is sold during the term of the plan, the unpaid taxes secured by said property shall be paid in full and upon the sale of the property. If any property which secures the ad valorem tax claims is repossessed and posted for sale by any lienholder, the Taxing Jurisdictions shall be free to pursue their state law remedies for collection of all amounts due under the Texas Property Tax Code. The claims of the Taxing Jurisdictions are superior to and shall be paid before the claims of Veritex.

MedCare Nursing Class 2 Claims. Allowed MedCare Group Class 2 Claims will be paid in cash, in full plus interest at a rate of 2.0% in equal monthly installments over a period of seventy-two (72) months after the Effective Date, with the first payment due within thirty (30) days after the Effective Date.

MedCare Nursing Class 3 Interests. MedCare Pediatric NSG, LLC will retain its 1% partnership interest in MedCare Nursing and continue to serve as its general partner. MedCare Group will surrender its limited partnership interest in MedCare Nursing. Steve Wang and Paige Kinkade will retain their limited partnership interests and obtain additional limited partnership interests in exchange for their capital contribution of payment of all administrative expenses for professional fees and conversion of their unsecured claims into limited partnership interests.

3.04 Treatment of MedCare Rehab's Claims and Interests.

MedCare Rehab Class 1 Claim. Notwithstanding anything to the contrary contained within the plan or approved disclosure statement, the Allowed MedCare Rehab Class 1 Claims shall be paid pursuant to the provisions of 11 U.S.C. § 1129(a)(9)(C) and (D), in equal monthly installments commencing 30 days from the Effective Date and ending 60 months from the Petition Date. The claims shall bear interest at the statutory rate of 12% per annum as provided by applicable non-bankruptcy law until said taxes are paid in full. The 2021 and subsequent ad valorem owed to the Taxing Jurisdictions shall be paid in the ordinary course of business and the Taxing Jurisdictions shall not be required to file a request for allowance and payment of their claims. The Taxing Jurisdictions shall retain all liens until such taxes are paid in full. In the event that any part of the retained property is sold during the term of the plan, the unpaid taxes secured by said property shall be paid in full and upon the sale of the property. If any property which secures the ad valorem tax claims is repossessed and posted for sale by any lienholder, the Taxing Jurisdictions shall be free to pursue their state law remedies for collection of all amounts due under the Texas Property Tax Code. The claims of the Taxing Jurisdictions are superior to and shall be paid before the claims of Veritex.

MedCare Rehab Class 2 Claims. Allowed MedCare Rehab Class 2 Claims will be paid in cash, in full plus interest at a rate of 2.0% in equal monthly installments over a period of seventy-two (72) months after the Effective Date, with the first payment due within thirty (30) days after the Effective Date.

MedCare Rehab Class 3 Interests. MedCare Pediatric Rehab Center GP, LLC will retain its 1% partnership interest in MedCare Rehab and continue to serve as its general partner. MedCare Group will surrender its limited partnership interest in MedCare Rehab. Steve Wang and Paige Kinkade will retain their limited partnership interests and obtain additional limited

partnership interests in exchange for their capital contribution of payment of all administrative expenses for professional fees and conversion of their unsecured claims into limited partnership interests.

3.05 Treatment of MedCare Therapy's Claims and Interests.

MedCare Therapy Class 1 Claim. Notwithstanding anything to the contrary contained within the plan or approved disclosure statement, the Allowed MedCare Therapy Class 1 Claims shall be paid pursuant to the provisions of 11 U.S.C. § 1129(a)(9)(C) and (D), in equal monthly installments commencing 30 days from the Effective Date and ending 60 months from the Petition Date. The claims shall bear interest at the statutory rate of 12% per annum as provided by applicable non-bankruptcy law until said taxes are paid in full. The 2021 and subsequent ad valorem owed to the Taxing Jurisdictions shall be paid in the ordinary course of business and the Taxing Jurisdictions shall not be required to file a request for allowance and payment of their claims. The Taxing Jurisdictions shall retain all liens until such taxes are paid in full. In the event that any part of the retained property is sold during the term of the plan, the unpaid taxes secured by said property shall be paid in full and upon the sale of the property. If any property which secures the ad valorem tax claims is repossessed and posted for sale by any lienholder, the Taxing Jurisdictions shall be free to pursue their state law remedies for collection of all amounts due under the Texas Property Tax Code. The claims of the Taxing Jurisdictions are superior to and shall be paid before the claims of Veritex.

MedCare Therapy Class 2 Claims. Allowed MedCare Therapy Class 2 Claims will be paid in cash, in full plus interest at a rate of 2.0% in equal monthly installments over a period of seventy-two (72) months after the Effective Date, with the first payment due within thirty (30) days after the Effective Date.

MedCare Therapy Class 3 Interests. MedCare Pediatric TPY, LLC will retain its 1% partnership interest in MedCare Therapy and continue to serve as its general partner. MedCare Group will surrender its limited partnership interest in MedCare Therapy. Steve Wang and Paige Kinkade will retain their limited partnership interests and obtain additional limited partnership interests in exchange for their capital contribution of payment of all administrative expenses for professional fees and conversion of their unsecured claims into limited partnership interests.

3.06 Treatment of Kinwan's Claims and Interests.

Kinwan Class 1 Claim. Veritex will retain its liens. The terms and conditions of the Kinwan Note, deed of trust and security agreement, and all other loan documents shall remain in place, except that the $300,000 payment described below shall be applied to principal of the loan and not to accrued by unpaid interest, and the monthly principal and interest payment will be recalculated after application of the principal paydown. Kinwan shall pay the sum of $300,000.00 to Veritex within thirty (30) days after the Effective Date. Kinwan shall make a monthly principal and interest payment in the recalculated amount for a period of sixty (60) months after the Effective Date, with the first such payment due on the first day of the month following the Effective Date and each subsequent payment due on the first of each month. The remaining principal and

accrued but unpaid interest due under the Kinwan Note, whether prepetition or postpetition in nature, shall be paid on or before the first day of the 19th month after the Effective Date.

Kinwan Class 2 Claim. Notwithstanding anything to the contrary contained within the plan or approved disclosure statement, the Allowed Kinwan Class 2 Claims shall be paid pursuant to the provisions of 11 U.S.C. § 1129(a)(9)(C) and (D), in equal monthly installments commencing 30 days from the Effective Date and ending 60 months from the Petition Date. The claims shall bear interest at the statutory rate of 12% per annum as provided by applicable non-bankruptcy law until said taxes are paid in full. The 2021 and subsequent ad valorem owed to the Taxing Jurisdictions shall be paid in the ordinary course of business and the Taxing Jurisdictions shall not be required to file a request for allowance and payment of their claims. The Taxing Jurisdictions shall retain all liens until such taxes are paid in full. In the event that any part of the retained property is sold during the term of the plan, the unpaid taxes secured by said property shall be paid in full and upon the sale of the property. If any property which secures the ad valorem tax claims is repossessed and posted for sale by any lienholder, the Taxing Jurisdictions shall be free to pursue their state law remedies for collection of all amounts due under the Texas Property Tax Code. The claims of the Taxing Jurisdictions are superior to and shall be paid before the claims of Veritex.

Kinwan Class 3 Interests. Steve Wang and Paige Kinkade will retain their membership interests in exchange for their capital contribution of payment of all administrative expenses for professional fees.

3.07 Treatment of KW Properties' Claims and Interests.

KW Properties Class 1 Claim. Veritex will retain its liens. The terms and conditions of the KW Properties Note, deed of trust and security agreement, and all other loan documents shall remain in place, except that the $100,000 payment described below shall be applied to principal of the loan and not to accrued by unpaid interest, and the monthly principal and interest payment will be recalculated after application of the principal paydown. KW Properties shall pay the sum of $100,000.00 to Veritex within thirty (30) days after the Effective Date. KW Properties shall make a monthly principal and interest payment in the recalculated amount for a period of sixty (60) months after the Effective Date, with the first such payment due on the first day of the month following the Effective Date and each subsequent payment due on the first of each month. The remaining principal and accrued but unpaid interest due under the KW Properties Note, whether prepetition or postpetition in nature, shall be paid on or before the first day of the 19th month after the Effective Date.

KW Properties Class 2 Claim. Notwithstanding anything to the contrary contained within the plan or approved disclosure statement, the Allowed KW Properties Class 2 Claims shall be paid pursuant to the provisions of 11 U.S.C. § 1129(a)(9)(C) and (D), in equal monthly installments commencing 30 days from the Effective Date and ending 60 months from the Petition Date. The claims shall bear interest at the statutory rate of 12% per annum as provided by applicable non-bankruptcy law until said taxes are paid in full. The 2021 and subsequent ad valorem owed to the Taxing Jurisdictions shall be paid in the ordinary course of business and the Taxing Jurisdictions shall not be required to file a request for allowance and payment of their claims. The Taxing Jurisdictions shall retain all liens until such taxes are paid in full. In the event that any part of the

retained property is sold during the term of the plan, the unpaid taxes secured by said property shall be paid in full and upon the sale of the property. If any property which secures the ad valorem tax claims is repossessed and posted for sale by any lienholder, the Taxing Jurisdictions shall be free to pursue their state law remedies for collection of all amounts due under the Texas Property Tax Code. The claims of the Taxing Jurisdictions are superior to and shall be paid before the claims of Veritex.

KW Properties Class 3 Interests. Steve Wang and Paige Kinkade will retain their membership interests in exchange for their capital contribution of payment of all administrative expenses for professional fees.

3.08 Treatment of KW Enterprises' Claims and Interests.

KW Enterprises Class 1 Claim. KW Enterprises shall, within sixty (60) days after the Effective Date, pay the balance due under the KW Enterprises Note or return the real property and improvements located at 5095 Preston Road, Pasadena, Texas 77505 to Veritex in full and final satisfaction of the amounts due under the KW Properties Notes.

KW Enterprises Class 2 Claim. Notwithstanding anything to the contrary contained within the plan or approved disclosure statement, the Allowed KW Enterprises Class 2 Claims shall be paid pursuant to the provisions of 11 U.S.C. § 1129(a)(9)(C) and (D), in equal monthly installments commencing 30 days from the Effective Date and ending 60 months from the Petition Date. The claims shall bear interest at the statutory rate of 12% per annum as provided by applicable non-bankruptcy law until said taxes are paid in full. The 2021 and subsequent ad valorem owed to the Taxing Jurisdictions shall be paid in the ordinary course of business and the Taxing Jurisdictions shall not be required to file a request for allowance and payment of their claims. The Taxing Jurisdictions shall retain all liens until such taxes are paid in full. In the event that any part of the retained property is sold during the term of the plan, the unpaid taxes secured by said property shall be paid in full and upon the sale of the property. If any property which secures the ad valorem tax claims is repossessed and posted for sale by any lienholder, the Taxing Jurisdictions shall be free to pursue their state law remedies for collection of all amounts due under the Texas Property Tax Code. The claims of the Taxing Jurisdictions are superior to and shall be paid before the claims of Veritex.

KW Enterprises Class 3 Interests. Steve Wang and Paige Kinkade will retain their membership interests in exchange for their capital contribution of payment of all administrative expenses for professional fees.

3.09 Treatment of KW Commercial's Claims and Interests.

KW Commercial Class 1 Claim. KW Commercial shall, on the Effective Date, pay Veritex $400,000.00 on the KW Commercial Note. In addition, KW Commercial shall make monthly principal and interest payments on the remaining balance under the KW Commercial Note, reamortized over a twenty (20) year term, for a period of six (6) months with the first such payment due on the first of the month following the Effective Date. The remaining unpaid principal and interest shall be due on the first date of the 7th month following the Effective Date. Within ten

(10) days after payment in full of the amount due under the KW Commercial Note, Veritex shall execute and file in the real property records of Galveston County, Texas a release of its deed of trust.

KW Commercial Class 2 Claim. Notwithstanding anything to the contrary contained within the plan or approved disclosure statement, the Allowed KW Commercial Class 2 Claims shall be paid pursuant to the provisions of 11 U.S.C. § 1129(a)(9)(C) and (D), in equal monthly installments commencing 30 days from the Effective Date and ending 60 months from the Petition Date. The claims shall bear interest at the statutory rate of 12% per annum as provided by applicable non-bankruptcy law until said taxes are paid in full. The 2021 and subsequent ad valorem owed to the Taxing Jurisdictions shall be paid in the ordinary course of business and the Taxing Jurisdictions shall not be required to file a request for allowance and payment of their claims. The Taxing Jurisdictions shall retain all liens until such taxes are paid in full. In the event that any part of the retained property is sold during the term of the plan, the unpaid taxes secured by said property shall be paid in full and upon the sale of the property. If any property which secures the ad valorem tax claims is repossessed and posted for sale by any lienholder, the Taxing Jurisdictions shall be free to pursue their state law remedies for collection of all amounts due under the Texas Property Tax Code. The claims of the Taxing Jurisdictions are superior to and shall be paid before the claims of Veritex.

KW Commercial Class 3 Interests. Steve Wang and Paige Kinkade will retain their membership interests in exchange for their capital contribution of payment of all administrative expenses for professional fees.

## ARTICLE IV

## ALLOWANCE AND DISALLOWANCE OF CLAIMS

4.01 Disputed Claim. A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, (ii) an administrative expense claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (iii) no proof of claim or administrative expense claim has been filed, or the Debtor has scheduled such pre-petition claim as disputed, contingent, or unliquidated or the Debtor has not agreed to the administrative expense claim.

4.02 Delay of Distribution on a Disputed Claim. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

4.03 Settlement of Disputed Claims. The Newly Reorganized Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure pursuant to Article VI below.

## ARTICLE V

## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

5.01 Assumed Executory Contracts and Unexpired Leases.

| Debtor | Other Party | Type of Agreement |
|---|---|---|
| MedCare Group | Bank of America Leasing | Unexpired lease of NetSuite software, 31 months remaining |
| MedCare Group | CIT | Unexpired lease of 4 copy machines |
| MedCare Group | Holders Pest Control | Executory contract for pest control services |
| MedCare Group | Iron Mountain | Executory contract, month to month, for storage |
| MedCare Group | Microsoft | Unexpired lease of OneDrive, Email, and cloud services |
| MedCare Group | Omni Fire and Security | Executory contract, month to month, for security services |
| MedCare Group | ProShred | Executory contract, month to month, for secure shredding services |
| MedCare Group | Raintree Systems | Unexpired software license |
| MedCare Group | Rise Corporate, LLC | Executory contract for staffing services |
| MedCare Group | TIAA | Unexpired lease of Nutanix servers with 5-year support and licenses |
| MedCare Group | Hudson Energy | Executory contract for energy services |
| MedCare Nursing | CFG Merchant Solutions | Executory contract for purchase of accounts receivable, 9 months remaining |
| MedCare Nursing | Kantime, Inc. | Unexpired lease of electronic medical records and data storage, 12 months remaining |
| MedCare Nursing | Raintree Systems | Executory contract for electronic medical records software hosting, month to month |
| MedCare Nursing | Rise Staffing, LLC | Executory contract for staffing services |
| MedCare Nursing | Zirmed | Unexpired license for claims gateway software, 9 months remaining |
| MedCare Nursing | Kinwan, LLC | Unexpired lease of building space at 12371 S. Kirkwood Rd., Stafford, TX, 32 months remaining |
| MedCare Rehab | Portia ABA Clinic Software | Executory contract for data collection services, month to month |
| MedCare Rehab | Rise ABA Therapy, LLC | Executory contract for staffing services, 10 months remaining |
| MedCare Rehab | Rise Pediatric Therapy Center, LLC | Executory contract for staffing services, 10 months remaining |
| MedCare Rehab | Waste Management | Executory contract for trash services at 5095 Preston Rd, Pasadena, TX, month to month |
| MedCare Rehab | Republic Services | Executory contract for trash services at 4818 E. Sam Houston Pkwy, Houston, TX |
| MedCare Rehab | Zirmed | Executory contract for claims management and batch services, 4 months remaining |
| MedCare Rehab | Kinkade-Wang Properties, LLC | Unexpired lease of building space at 4818 E. Sam Houston Pkwy, Houston, TX, 32 months remaining |
| MedCare Rehab | Kinwan, LLC | Unexpired lease of building space at 12371 S. Kirkwood Rd., Stafford, TX, 32 months remaining |
| MedCare Therapy | Rise Home Health, LLC | Executory contract for staffing services, 10 months remaining |
| MedCare Therapy | Kinwan, LLC | Unexpired lease of building space at 12371 S. Kirkwood Rd., Stafford, TX, 32 months remaining |

| | | |
|---|---|---|
| Kinwan | MedCare Nursing, MedCare Rehab, and MedCare Therapy | Unexpired lease of building space at 12371 S. Kirkwood Rd., Stafford, TX, 32 months remaining |
| KW Properties | MedCare Rehab | Unexpired leases of building space at 4818 E. Sam Houston Pkwy, Houston, TX, and 21004 N. I-45, Houston, TX, 32 months remaining |

5.02 Rejected Executory Contracts and Unexpired Leases.

| Debtor | Other Party | Type of Agreement |
|---|---|---|
| MedCare Group | Wells Fargo Vendor Finance | Unexpired lease of copy machines, 32 months remaining |
| MedCare Rehab | Kinkade-Wang Enterprises, LLC | Unexpired lease of building space at 5095 Preston Road, Pasadena, TX, 32 months remaining |
| MedCare Rehab | Kinkade-Wang Properties, LLC | Unexpired lease of building space at 21004 N. I-45, Houston, TX, 32 months remaining |
| KW Enterprises | MedCare Rehab | Unexpired lease of building space at 5095 Preston Road, Pasadena, TX, 32 months remaining |

5.03 Claims for Rejection Damages. Any party claiming damages as a result of the Debtor's rejection of the unexpired leases and executory contracts described above in 5.02 must file a proof of claim and/or application for administrative expenses within sixty (60) days after the Effective Date, or such claim and the indebtedness owing thereunder shall be forever barred and extinguished.

## ARTICLE VI

## MEANS FOR IMPLEMENTATION OF THE PLAN

6.01 On the Effective Date, the Newly Reorganized Debtor will execute all other documents necessary to the implementation of the Plan and the Order of Confirmation.

6.02 On or before sixty (60) days after the Effective Date, KW Enterprises and KW Properties will either pay in full to Veritex the balances due on the KW Enterprises Note ecured by the Pasasdena Property and on the KW Properties Note secured by the I-45 North Property or return those properties to Veritex in full and final satisfaction of those promissory notes.

6.03 MedCare Nursing will continue its operations of seeing patients in their homes, since this is a home health care operation, but administrative offices will remain at the Stafford location.

6.04 Kinwan will obtain a tenant on a long-term lease of the unimproved real property next door to the Stafford Building. Kinwan will also seek to obtain a tenant on a short-term lease for the office space on the second floor of the Stafford Building. The revenue will be used for payment of the principal and interest payments to Veritex on the Kinwan Note. Any excess rental will be contributed to the MedCare Companies' Plan funds for payments under the Plan. Kinwan will actively seek refinancing or a buyer for the Stafford property to pay off the promissory note

to Veritex secured by the Stafford property. KW Properties will retain its E. Sam Houston Pkwy. Property and continue leasing it to MedCare Rehab. KW Properies will use the rental payments to make its principal and interest payments under the KW Properties Note to Veritex. If Kinwan is unable to pay off the balance due on the Kinwan Note to Veritex within sixty (60) months after the Effective Date, Kinwan will return the Stafford property to Veritex. If KW Properties is unable to pay off the balance due on the KW Properties Note within sixty (60) months after the Effective Date, KW Properties will return the E. Sam Houston Pkwy. Property to Veritex. In that event, MedCare Group, MedCare Rehab and MedCare Therapy will obtain another lease of office space and begin operating in that new space.

6.05 Steve Wang and Paige Kinkade will sell various personal assets with a net value of approximately $1 million and contribute sufficient funds from the sale to pay the remaining balance of the Allowed Claim of the IRS.

6.06 Steve Wang and Paige Kinkade will enter into a debt to equity swap agreement with the Debtors to convert their Allowed unsecured Claims into equity in the Debtors.

6.07 Causes of Action. Pursuant to 11 U.S.C. § 1123(b)(3)(B), as of the Effective Date any Causes of Action that are already pending or that are property of the estate of the Debtor, even if not yet filed, including, without limitation all common law tort, statutory tort, statutory claims and contract claims and claims for equitable relief of all kinds and avoidance or recovery actions under 11 U.S.C. § 544, 545, 547, 548, 549, 550, 551 and 553, that are not released as a part of this Plan, shall become property of the Newly Reorganized Debtor. The Newly Reorganized Debtors shall have the authority to prosecute such Causes of Action for the benefit of the estate and its creditors to be distributed pursuant to this Plan. The Newly Reorganized Debtors shall have the authority to compromise and settle, otherwise resolve, discontinue, abandon or dismiss all such Causes of Action without approval of the Bankruptcy Court. All cash received by the Newly Reorganized Debtors as a result of prosecution or settlement of any Causes of Action or of enforcement of any judgment or order obtained in connection with any Cause of Action shall be distributed in accordance with the terms of the Plan. Unless a Cause of Action is released as an express term of this Plan, no Cause of Action is released by confirmation of this Plan, and confirmation of the Plan shall not have any *res judicata* or collateral estoppel effect on the Newly Reorganized Debtors' prosecution of any Cause of Action.

6.08 Objections. Any party in interest, including, without limitation, the Newly Reorganized Debtors may make and file objections to the Claims. No party is obligated to administer, dispute, reserve for, object to, compromise, resolve or make Distributions with respect to any and all Allowed Claims. No party is obligated to object to any Claim but will nevertheless have standing to object to any such Claim from and after the Effective Date, if they so elect in their absolute discretion. Nothing in this section is intended to limit the right of any party in interest to object to Claims.

6.09 Pre-Petition Claim and Administrative Claim Bar Date; Objection Deadline.

Creditors must have filed their proofs of claims with respect to pre-petition claims on or before the Bar Date of July 1, 2020 (or September 2, 2020 for a governmental unit), fter which

date any proof of claim filed will have no effect on the Plan and no right to participate with other creditors under the Plan.

Except as excepted below, all persons and entities (including without limitation, individuals, partnerships, corporations, joint ventures, trusts, and governmental units), that assert any claim against the Debtors pursuant to Section 503(b) of Bankruptcy Code that first arose or accrued after March 1, 2020 (an "Administrative Expense"), shall file an application for approval of the Administrative Expense in writing on or before September 2, 2020 (the "Administrative Expense Bar Date"). The holders of the following types of claims (the "Excluded Administrative Expenses") are not required to file applications for Administrative Expense on or before the Administrative Expense Bar Date:

(a) Administrative Expenses of professional persons, as that term is used in sections 327, 328, 330, 331, 503(b)(2) and/or 1103 of the Bankruptcy Code, retained pursuant to a final order of the Court;
(b) Administrative Expenses, if any, previously allowed by order(s) of the Court;
(c) Administrative Expenses, if any, on account of which a motion requesting allowance and payment already has been filed in the Court against the Debtor; and
(d) Administrative Expenses held by the United States Trustee for the Southern District of Texas which arise under section 1930(a)(6) of title 28 of the United States Code.

Any holder of a claim for Administrative Expense against the Debtors that is required, but fails to file an application for Administrative Expense on or before the Administrative Expense Bar Date shall (i) be forever barred, estopped, and enjoined from asserting any Administrative Expense against the Debtors, the Debtors' estates, or the Newly Reorganized Debtors and they shall be deemed forever discharged from any and all indebtedness or liability with respect to such Administrative Expense and (ii) not be entitled to receive further notices regarding such Administrative Expenses. Nothing in this Order shall, or shall be deemed to, prejudice the Debtors' or any other party's right to object to any Administrative Expense on any ground, or to dispute, or to assert offsets against or defenses to, any Administrative Expense as to amount, liability, classification, priority or otherwise, and to subsequently designate any claim or lien as disputed, contingent, or unliquidated.

Except as otherwise set forth in the Plan or as otherwise extended or ordered by the Bankruptcy Court, all objections to pre-petition claims and/or post-petition administrative expense claims must be filed no later than one hundred twenty days (120) days after the Effective Date (unless such day is not a Business Day; in which case, such deadline will be the next Business Day thereafter unless extended by an order of the Bankruptcy Court). An objection to a Claim will be deemed properly served on the holder thereof if service is effected by any of the following methods: (a) in accordance with Rule 4 of the Federal Rules of Civil Procedure, as modified and made applicable by Bankruptcy Rule 7004; (b) to the extent counsel for a Claimant is unknown, by first-class mail, postage prepaid, on the signatory on the proof of Claim or other representative identified on the proof of Claim or any attachment thereto; or (c) by first-class mail, postage prepaid, on any counsel that has appeared on the behalf of the Claimant in the Bankruptcy Case.

6.10 Settlement of Objections to Claims. From and after the Effective Date, pursuant to Bankruptcy Rule 9019(b) and Section 105(a) of the Bankruptcy Code, the Reorganized Debtors shall be entitled to compromise and settle his objections to Disputed Claims without notice to the Creditors/beneficiaries or approval from the Bankruptcy Court.

6.11 Post-Confirmation Amendments to Proofs of Claims. Except as otherwise provided in the Plan, following the Confirmation Date, a Claim may not be amended unless such amendment results in a decrease of the amount of the Claim, change in priority of the Claim to a lower priority under the Bankruptcy Code, or withdrawal of Claim. Any unauthorized amendment shall be deemed null, void, and of no force or effect.

6.12 Claims Estimation. The Reorganized Debtors may request estimation or limitation of any contingent, unliquidated, or Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether that Claim was previously objected to or whether the Bankruptcy Court has ruled on any such objection; provided, however, that the Bankruptcy Court will determine (a) whether such Disputed Claims are subject to estimation pursuant to Section 502(c) of the Bankruptcy Code and (b) the timing and procedures for such estimation proceedings, if any. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. If the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Reorganized Debtors may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Plan or the Bankruptcy Court.

6.13 Procedures for Treating and Resolving Disputed and Contingent Claims.

(a) No Distributions on Disputed Claims Pending Allowance. No Distributions shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by a Final Order and the Disputed Claim has become an Allowed Claim. The Reorganized Debtors may, in his sole discretion, withhold Distributions otherwise due hereunder to the holder of a Claim until the Objection Deadline to enable the Reorganized Debtors to file a timely objection thereto. When a Disputed Claim becomes an Allowed Claim, the Reorganized Debtors shall make Distributions with respect to such Allowed Claim, without interest (except as otherwise provided in this Plan), net of any setoff and/or any required withholding of applicable taxes.

(b) Distribution Reserve Account. On or after the Effective Date, the Reorganized Debtors will establish a Distribution Reserve Account as is appropriate, in their sole and absolute discretion, for the benefit of holders of Disputed Claims pending the allowance thereof, the amount of which will be adjusted from time to time as appropriate. A Claimant will not be entitled to receive or recover any amount in excess of the amount provided in the Distribution Reserve

Account specifically reserved to pay such Claim unless permitted by Order of the Bankruptcy Court. Nothing in the Plan will be deemed to entitle the holder of a Disputed Claim to post-petition interest on such Claim, if Allowed, unless otherwise required under the Bankruptcy Code or the Plan.

(c) Distributions After Allowance. Payments and Distributions from the Distribution Reserve Account to each respective holder of a Disputed Claim, to the extent it becomes an Allowed Claim, will be made in accordance with the provisions of the Plan that govern Distributions to such holders of Claims in the Class in which such Claimant is classified. Unless otherwise provided in the Plan, as promptly as practicable after the date on which a Disputed Claim becomes undisputed, non-contingent, liquidated and Allowed, and in no event later than thirty (30) days after the Disputed Claim becomes an Allowed Claim, the Reorganized Debtor will distribute to the Claimant the property from the Distribution Reserve Account that would have been distributed to such Claimant had its Claim been an Allowed Claim on the date that Distributions were previously made to holders of Allowed Claims in the Class in which such Claimant is classified under the Plan. After all Disputed Claims have been resolved and all such Claims that become Allowed Claims have been paid in full, any remaining property in the Distribution Reserve Account will be distributed the Reorganized Debtor.

(d) Allowance of Claims Subject to Bankruptcy Code Section 502(d). Allowance of Claims will, in all respects, be subject to the provisions of Section 502(d) of the Bankruptcy Code, except as provided by a Final Order of the Bankruptcy Court or a settlement among the relevant parties.

## ARTICLE VII

## GENERAL PROVISIONS

7.01 Definitions and Rules of Construction. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan.

7.02 Effective Date of Plan. The effective date of this Plan is the first business day following the date that is fourteen days after the entry of the order of confirmation. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay of the confirmation order expires or is otherwise terminated.

7.03 Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

7.04 Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

7.05 Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

7.06 Controlling Effect. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

## ARTICLE VIII

## MODIFICATION OF PLAN

8.01 The Debtors may propose amendments or modifications of this Plan at any time prior to confirmation, without leave of the Court, so long as such amendment or modification meets the requirements of 11 U.S.C. § 1127(a) does not constitute a material modification of the Plan requiring additional disclosure under 11 U.S.C. § 1125. After the Confirmation Date, the Debtors may, with approval of the Court, and so long as it does not materially or adversely affect the interests of Creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan, or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and effect of this Plan.

## ARTICLE IX

## JURISDICTION OF THE COURT

9.01 The Court shall retain jurisdiction of this case after the Effective Date until all payments and distributions called for under the Plan have been made and until entry of a Final Order concluding and terminating this case, in respect of the following matters:

A. To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked or vacated.

B. To hear objections to proofs of claim in connection with any contingent or unliquidated Claim.

## ARTICLE X

## EFFECT OF CONFIRMATION

10.01 Discharge of Claims and Termination of Interests. Pursuant to section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan, or in any contract, instrument, or other agreement or document created or entered into pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Reorganized Debtors), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and interests in, the Debtors or any of their assets or properties,

regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not: (1) a Proof of Claim based upon such debt or right is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the holder of such a Claim or Interest has accepted the Plan. The Confirmation Order shall be a judicial determination of the discharge of all Claims (other than the Reinstated Claims) and Interests (other than the Intercompany Interests that are Reinstated) subject to the occurrence of the Effective Date.

10.02 Plan is Binding. The provisions of this confirmed Plan bind the Debtors, any entity acquiring property under the Plan, and any Creditor, whether or not the Claim of such Creditor is impaired under the Plan and whether or not such Creditor has accepted the Plan. All liens, Allowed Claims, Interests and encumbrances regarding Estate Property shall be treated as specifically set forth in the Plan.

10.03 Guarantees and Joint Obligations. The classification and manner of satisfying all claims under this plan takes into consideration: (a) the existence of guarantees by the Debtors of obligations of other persons and of third parties of debts of the Debtor, (b) the fact that the Debtors may be a joint obligor with another person or persons with respect to the same obligation, and (c) any contention by holders of Claims that the Claims of other holders are subordinated by contract or otherwise to their Claims. All Claims against the Debtors are based upon the express requirement and terms of this Plan that any such guarantees, subordination claims or joint obligations shall be discharged in the manner provided in this Plan, and which holder of such Claims shall be entitled to only one distribution with respect to any obligation of the Debtors. All Claims against the Debtor, and all rights and claims between or among holders of Claims relating in any manner whatsoever to Claims against the Debtors, based upon any claimed subordination rights or rights to avoid payments or transfers of property pursuant to any provision of the Bankruptcy Code or other applicable law, shall be deemed satisfied by the distributions under this Plan to holders of Allowed Claims hereunder and shall not be subject to levy, garnishment, attachment, or like legal process by any holder of a Claim by reason of any claim subordination rights or otherwise, except as otherwise provided herein, so that each holder of a Claim shall have and receive the benefits of the distributions in the manner set forth in this Plan.

10.04 Permanent Injunction. Unless otherwise specified in this Plan, all Entities who have held, hold, or may hold Claims against the Debtors are permanently enjoined on and after the Effective Date from: (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim against the Debtors; (b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtors with respect to any such Claim; (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors or against property of the Debtors or with respect to any such Claim; (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any

obligation due the Debtors or against property of the Debtors with respect to any such Claim; (e) conducting any form of discovery from the Debtors with respect to any such Claim; and/or (f) harassing the Debtors. Unless otherwise provided in this Plan, all injunctions or stays set forth in Sections 105 and 362 of the Bankruptcy Code (11 U.S.C. §§ 105 and 362) shall remain in full force and effect until the Effective Date of the Plan rather than the Confirmation Date. However, this shall not be construed as a limitation of the permanent injunctions provided for in the Plan. **The post-confirmation injunction described above shall also apply to Veritex's suit on the guaranty agreements against Paige Kinkade and Steve Wang so long the Debtors perform their obligations to Veritex under the Plan. If the Debtors fail to timely perform such obligations to Veritex under the Plan, the post-confirmation injunction shall cease to apply against Veritex as to the guarantors Paige Kinkade and Steve Wang.**

10.05 U.S. Trustee Requirements. The Debtor shall be responsible for timely payment of fees incurred pursuant to 28 U.S.C. § 1930(a)(6), and it shall timely pay post-confirmation fees owed to the Office of the U.S. Trustee and assessed pursuant to 28 U.S.C. § 1930(a)(6) until such time as the court enters a final decree closing this Chapter 11 case or enters an order either converting this case to Chapter 7 or dismissing this case. After confirmation, the Debtor, on or before the last day of the month after the end of each calendar quarter, shall file with the Bankruptcy Court and shall transmit to the Office of the U.S. Trustee a true and correct statement, in a format agreed to by the U. S. Trustee, of all disbursements made for each quarter or portion thereof that this Chapter 11 case remains open.

## ARTICLE XI

## DEFAULT UNDER THE PLAN

11.01 If there is a default in payments under the plan, then any party may give a 10-day notice to Debtors and Debtors' counsel with opportunity to cure the default. If the default is not cured, then it shall be an Event of Default and each party may exercise all rights (i) under the Plan; or (ii) applicable non-bankruptcy law.

*[Remainder of Page Intentionally Left Blank]*

DATED: May 15, 2020

By: ______________________________
**Paige Kinkade on behalf of:**

MEDCARE PEDIATRIC GROUP, LP
MEDCARE PEDIATRIC NURSING, LP
MEDCARE PEDIATRIC REHAB CENTER, LP
MEDCARE PEDIATRIC THERAPY, LP
KINWAN, LLC
KINKADE-WANG PROPERTIES, LLC
KINKADE-WANG ENTERPRISES, LLC
KW COMMERCIAL HOLDINGS, LLC

**WAUSON | PROBUS**

By: ______________________________
**Matthew B. Probus**
State Bar No. 16341200
Fed. I.D. No. 10915

Comerica Bank Building
One Sugar Creek Center Blvd., Suite 880
Sugar Land, Texas 77478
Tele. No. (281) 242-0303
Fax No. (281) 242-0306
mbprobus@w-plaw.com

ATTORNEYS FOR DEBTORS,
MEDCARE PEDIATRIC GROUP, LP
MEDCARE PEDIATRIC NURSING, LP
MEDCARE PEDIATRIC REHAB CENTER, LP
MEDCARE PEDIATRIC THERAPY, LP
KINWAN, LLC
KINKADE-WANG PROPERTIES, LLC
KINKADE-WANG ENTERPRISES, LLC
KW COMMERCIAL HOLDINGS, LLC